UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

-----------------------------------------------------------------X

In re

MARITIMO OFFSHORE PTY. LTD.

Debtor in a Foreign Proceeding.

In a Case Under Chapter 15
of the Bankruptcy Code

Case No.: 16-_____(AMN)

-----------------------------------------------------------------X

**JOINT DECLARATION OF FOREIGN REPRESENTATIVES IN SUPPORT OF ADMINISTRATORS' VERIFIED PETITION FOR ENTRY OF AN ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING PURSUANT TO 11 UNITED STATESC. §§ 1515, 1517, 1520.**

Brian Silvia and Andrew Cummins, jointly, pursuant to Title 28 of the United States Code § 1746, hereby declare under penalty of perjury as follows:

1. Maritimo Offshore PTY. LTD. ("Maritimo" or "Debtor"), by and through their administrators (Administrators appointed) and foreign representatives Brian Silvia and Andrew Cummins ("Petitioners"), as defined under Title 11, United States Bankruptcy Code, § 101(24), hereby submit this Declaration ("Joint Declaration") in support of the Verified Petition under Chapter 15 for recognition of a foreign main proceeding.[1]

2. On October 11, 2016, Maritimo was placed into voluntary administration in Australia and the undersigned were appointed as Administrators pursuant to § 436A of the Australian Corporations Act 2001 ("Corporations Act"). The undersigned Brian Silvia is a Partner at BRI Ferrier, and an Official Liquidator and a Chartered Accountant under Australian law with over 35 years of experience acting in this capacity (both jointly and individually) for

---

[1] Citations to any statute shall mean and refer to the sections under Title 11 of the United States Bankruptcy Code, unless otherwise provided.

companies that have had administrators appointed as part of the voluntary administration under the Corporations Act, like Maritimo. Andrew Cummins is an Official Liquidator and Chartered Accountant with over 25 years of experience acting in this capacity, and is also a Partner at BRI Ferrier. BRI Ferrier is a firm in Australia that specializes in dealing with corporate voluntary administration, debt adjustment, reorganizations and restructuring.

3. Petitioners are duly authorized to make this Joint Declaration acting in their capacity as Administrators and foreign representatives for Maritimo. Where the matters stated in this Joint Declaration are statements of fact that are within personal knowledge, they are true, and as to matters stated in this Joint Declaration that are not within personal knowledge, they are derived from documents and/or information provided to me by Maritimo, pursuant to the Australian Voluntary Administration and are true to the best of the undersigned's knowledge, information and belief.

## I. BACKGROUND OF THE VOLUNTARY ADMINISTRATION

4. Maritimo is a limited proprietary company that was formed in Queensland, Australia. Maritimo is registered and incorporated in Australia as a private company that is not listed on the Australian Stock Exchange. Maritimo's registered office and principal place of business is located at 15 Waterway Drive, P.O. Box 452, Coomera, Queensland 4210, Australia, and Maritimo also occupies another location in Australia at 6 John Lund Drive, Hope Island, QLD, Australia 4212, Lots 6-7, as part of conducting its operations. Maritimo manufactures luxury and cruising motor yachts, sports yachts and other vessels ("Vessels"). These Vessels are sold under the "Maritimo" brand by other companies in several countries, including, but not limited to, in the United Kingdom, United States, New Zealand and Australia. The manufacturing operations and all management of Maritimo is solely conducted in Australia.

5. Maritimo manufactures approximately thirty (30) vessels each financial year (Australian Financial Year is from July 1 to June 30).

6. Maritimo has six (6) full time employees in Australia, but contracts with fifty (50) contractors, all of whom are Australian residents/businesses. Maritimo also has a few independent contractors, who are not employees or agents of Maritimo, in the United States and in other countries, in order to assist customers in resolving any issues pertaining to vessels that are purchased in these countries outside of Australia.

7. All of Maritimo's management are all residents of Australia.

8. All management, business and strategic decisions relating to Maritimo are made solely by Maritimo's management in Australia.

9. Maritimo has a transactional account with Westpac Banking Corporation ("WestPac"), an Australian bank and financial services provider headquartered in Sydney, Australia, and one of Australia's "Big 4" banks in the Western Pacific region. This transactional account is mainly used to pay suppliers and for the deposit of receivables.

10. Maritimo has no principal place of business or employees in the United States, and no registered place of business.

11. Maritimo has no property in the United States other than inchoate intangible property in the form of cross claims against the co-defendants in a proceeding commenced in the United States District Court for the District of Connecticut which is discussed hereinbelow.

### A. DECISION TO COMMENCE WITH VOLUNTARY ADMINISTRATION

12. Maritimo's Board of Directors conducted meetings which resulted in a resolution by the Sole Director ("Resolution") dated October 11, 2016, which concluded that Maritimo was likely to become insolvent at some point and appointed the Administrators (who are registered

liquidators under the Australian Securities and Investment Commission ("ASIC") as required by law)) for purposes of undertaking a Voluntary Administration under the Corporations Act. A copy of the Resolution is annexed hereto as Exhibit A.

13.     Voluntary Administration was decided as the best course to maximize the chance of the company continuing in existence *vis a vie* through the administration process.

14.     In accordance with the Resolution, Maritimo commenced with a Voluntary Administration in Australia by appointing the Administrators herein on October 11, 2016.

15.     The commencement of the Voluntary Administration under the Corporations Act in Australia resulted in an automatic moratorium (stay) in Australia on the rights of both secured and unsecured creditors, including those in litigation with unliquidated claims, from commencing or continuing any lawsuits, including any already pending, against Maritimo and Maritimo's respective properties.

16.     As of the date of this application, the Administrators herein are carrying out their respective roles and responsibilities as authorized and empowered pursuant to Australian law.

### B.     STATUS OF THE ADMINISTRATION

17.     The Australian Voluntary Administration process requires the occurrence of two separate meetings of creditors. In the first meeting, the creditors obtain information about the administration process and can vote to remove the administrator(s) appointed and replace with alternative administrator(s), if the case may be, and can vote whether to appoint a committee of creditors, and, if that is the case, to vote on the composition of such committee.

18.     The first meeting of creditors is required to be held within be eight (8) days of the appointment of the Administrators and is scheduled to be held on October 21, 2016 with notice to the creditors served on October 13, 2016.

19. A second meeting of creditors must be held within twenty (20) days of the appointment of the Administrators although the meeting may be adjourned for up to forty-five (45) days without leave of Court. The second meeting of creditors is scheduled to be held on November 15, 2016.

20. At the second creditors meeting, the Administrators will prepare what is known as a 439A report under the Corporations Act to present to the creditors in which the Administrators will make a recommendation for the creditors consideration about the future of the company, and the creditors will exercise a vote to determine the outcome of the Voluntary Administration and the future of Maritimo.

21. Under Australian law, the Administrators can either recommend in the 439A report that the company enter into a deed of company arrangement ("DOCA"), which is a reorganization plan for the company in which the company will emerge once the DOCA is put into effect; the termination of the Voluntary Administration with control of the company reverting back to its company directors; or, that the company commence winding up and ultimately liquidate. In exercising a vote, the 439A report also discloses the returns to the creditors under each scenario, and if a DOCA is proposed, the details of the reorganization plan.

22. A DOCA can be adopted if voted for by a 50% majority in value and a 50% majority in number of all creditors (voting as a single class), and with the Administrators exercising a casting vote in the event of deadlock or in the event that only one of the majorities, either in value or number, is met.

23. Pursuant to Australian law, after the commencement of a Voluntary Administration, only secured creditors with a security interest over the whole or substantial assets of the company, would have a right to privately appoint a receiver (controller) for the

purpose of protecting some or all of that creditors assets and their collateral, if necessary, in which they hold a security interest. An appointment of a receiver does not nullify and is concurrent with the voluntary administration as the claims of unsecured creditors are processed within the administration. As of this date, no receiver has been appointed, and no receiver is expected to be appointed. However, in the event a receiver is appointed by a creditor or creditors, the administration and receivership proceedings would proceed in tandem with the rights and responsibilities of the administrators and receivers pursuant to Australian law.

## II. THE DISTRICT COURT PROCEEDING IN THE UNITED STATES

24. The information set forth hereinbelow regarding the proceeding captioned as *Richard and Shelia Dubois, Michael Flors v. Maritimo Offshore PTY. LTD., Maritimo USA, Edwin Fairbanks and Fairbanks Yacht Group, LLC*, United States District Court for the District of Connecticut, New Haven, Connecticut, Case No. 3:15-CV-01114-JAM is based on information provided by counsel for Maritimo and/or Maritimo, which is believed to be true ("District Court Proceeding").

25. The District Court Proceeding was commenced by the Plaintiffs Richard and Sheila Dubois, and Michael Flors, in July 2015. Maritimo was eventually served with an Amended Complaint on or about November 25, 2015. Maritimo subsequently, along with the co-defendants, filed a motion to dismiss the Amended Complaint. Plaintiffs responded by filing a Second Amended Complaint and Maritimo and the co-defendants responded by filing a second motion to dismiss. As of this date, the motions filed by Maritimo and the co-defendants to dismiss Plaintiffs' Second Amended Complaint remain pending. Maritimo has also been served with cross claims and amended cross claims by the co-defendants Edwin Fairbanks and Fairbanks Yacht Group, LLC ("Fairbanks Defendants"), which are also the subject of motions to dismiss by Maritimo, which are pending. Plaintiffs seek damages against Maritimo in excess of

One ($1) Million Dollars, based on a number of alleged claims, including, without limitation, breach of contract. The Fairbanks Defendants seek damages, for alleged non-payment of commissions against Maritimo arising from the transaction with the Plaintiffs, and for a separate transaction, of approximately $200,000, based on several alleged claims, including, without limitation, breach of contract, and seek indemnification and contribution as well as recovery of their attorneys' fees and costs.

26. Maritimo filed cross claims against the Fairbanks Defendants in turn for indemnification, contribution and damages for negligent misrepresentation, including recovery of its costs and attorney fees in defending the District Court Proceeding.

27. Maritimo has had to incur substantial legal fees in vigorously defending the District Court Proceeding by filing motions to dismiss against the parties' amended pleadings, personal appearances in the District Court Proceeding on behalf of Maritimo, preparing and filing papers in the Court, and for other activity in defense thereof.

28. Given the procedural posture of the District Court Proceeding, and the fact that motions to dismiss remain outstanding, no discovery has been conducted, no answer filed and no judgment has not been entered against Maritimo at this date.

### III. THE AUSTRALIAN VOLUNTARY ADMINISTRATION IS A FOREIGN MAIN PROCEEDING UNDER THE BANKRUPTCY CODE

29. The Australian Voluntary Administration commenced under the Corporations Act in Australia relating to administration and the adjustment of debt is a foreign proceeding. The assets and affairs of Maritimo are subject to the control and supervision of the Australian Federal Court ("Australian Court") although the company, and not the Australian Court, appoints the administrator in a voluntary administration. Instead, the Australian Court has numerous powers to make orders concerning the Voluntary Administration as the administration is subject to the

Australian Court's supervision, including the Administrators performance of their duties herein, since the Australian Court is empowered and can exercise its authority to have an administrator removed. The Australian Court also may hear applications filed by the Administrators for guidance and other matters, and applications filed by creditors, and other interested parties during the administration process, including accepting appeals. Accordingly, based upon the definitions under the Bankruptcy Code, the Australian Voluntary Administration is a foreign proceeding. § 101(23).

30. For purposes of Chapter 15, the Australian Voluntary Administration involving Maritimo are the only judicial or administrative proceedings in a foreign country relating to adjustment of debt or insolvency in which the assets and affairs of Maritimo are subject to control or supervision by a foreign Court for the purposes of reorganization or liquidation, and the only proceedings of any kind that are pending with respect to Maritimo. Therefore, the Australian Voluntary Administration is the only foreign proceeding within the definitions of the Bankruptcy Code. § 101(23).

31. The Administrators that are applying for recognition by the Petition under Chapter 15 are foreign representatives within the definition of the Bankruptcy Code. §§ 101(24), 1517(a)(2).

32. The Australian Voluntary Administration constitutes a foreign main proceeding within the meaning of the Bankruptcy Code because Maritimo has its center of main interests ("COMI") in Australia. § 1502(4).

33. Maritimo was formed and incorporated as a limited proprietorship under Australian law, and has its headquarters, principal place of business, and registered office in Australia, and is a privately held company that is not listed, but is eligible to be listed, on the

Australian Stock Exchange. All of Maritimo's principal corporate, management, banking and strategic functions are undertaken solely in Australia. § 1517(b)(1).

34. The management of Maritimo reside in Australia. Therefore, all business and management decisions and all major budgeting, financial, and overall strategic decisions, including the manufacture of the vessels constituting Maritimo brand, are undertaken solely in Australia. Similarly, treasury, cash management, and banking arrangements for Maritimo are conducted and coordinated solely in and from Australia.

35. All of the principal books and records of Maritimo are located and maintained in Australia.

36. Maritimo is 100% owned by Maritimo Properties PTY. LTD. Maritimo manufactures its vessels for a group of companies ("Maritimo Group"). Maritimo ceased export sales of its Vessels externally several months prior to the commencement of the Voluntary Administration. Maritimo is only capable of operating its business with the support of the Maritimo Group and would be rendered unprofitable otherwise. The majority, if not all, of the principal amounts owed to creditors, are in Australia, and/or held by Australian lenders and secured creditors, primarily to a related company. Maritimo owes approximately USD $13 Million ($13,000,000.00) to a related secured creditor which is a member of the Maritimo Group. Maritimo relies on that debt funding in order to be able to complete its work in progress.

37. Accordingly, the Petitioners filed a Chapter 15 Verified Petition in this Court, in the jurisdiction and venue in which Maritimo is named as a defendant in the District Court Proceeding.

38. As described in further detail below, the Petitioners seek recognition of the Australian Voluntary Administration as a foreign main proceeding, and seek to extend the relief

which is already in effect in Australia pursuant to the Corporations Act, in the form of a moratorium, to stay the District Court Proceeding in Connecticut, and the commencement of any other proceedings against Maritimo in the United States to best assure an economical, expeditious and equitable administration of Maritimo's assets.

39. Upon the commencement of the Australian Voluntary Administration, a stay went into effect enjoining all actions, and all persons and entities from commencing or continuing any pending actions against Maritimo or its assets in Australia, absent leave from the Australian Court.

40. In the event any judgment, if any, is obtained in the District Court Proceeding if allowed to continue, absent a stay, or if any default was taken if Maritimo was unable to continue to incur costs to defend the action now that the company is in Voluntary Administration, the parties would be subject to the control and authority of the Australian Courts, and could not pursue enforcement or collection actions, or other actions in violation of the stay in Australia, which would undermine the Voluntary Administration and irreparably harm Maritimo's creditors without any adequate remedy.

41. Given the District Court Proceeding, and the potential for other actions against Maritimo, by other actors or entities in the United States, relief from this Court is necessary to extend the moratorium in Australia to the United States, *vis-à-vis*, the Chapter 15 Petition as the Voluntary Administration meets the requirements for recognition as a foreign main proceeding, triggering the automatic stay under the Bankruptcy Code.

42. The proposed relief herein will allow for the orderly Voluntary Administration of Maritimo's affairs and equitable resolution of Maritimo's liabilities, under supervision of the

Australian Courts, and in accordance with the Corporations Act which provides for the adjustment of debts, including reorganization if a DOCA is voted by the majority.

43. A stay of actions against Maritimo will not only preserve Maritimo's assets for the benefit of creditors, but also allow the Petitioners to devote their full attention to effectively and efficiently proceed with the Voluntary Administration in Australia, rather than diverting the Administrators' and Maritimo's attention, assets and resources in defending any proceedings in the United States.

The Petitioners declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Australia on this
20th day of October 2016

_____
Brian Silvia, as Administrator of
Maritimo Offshore PTY. LTD.
(Administrator Appointed)

Executed in Australia on this
20th day of October 2016

_____
Andrew Cummins, as Administrator of
Maritimo Offshore PTY. LTD.
(Administrator Appointed)

### UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT

State, District of Columbia, Territory, Possession, or Foreign Country _____ ) ss.:

On the 20th day of October month of the year 2016 before me, the undersigned, personally appeared Brian Silvia personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and

acknowledged to me that he/she/they executed the same in his/her/their/ capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _Australia_. (Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
(Signature and office of individual taking acknowledgment)

Geoffrey Peter Granger
A Justice of the Peace in and for
The State of New South Wales
183054

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT

State, District of Columbia, Territory, Possession, or Foreign Country _____ ) ss.:

On the 20th day of October month of the year 2016 before me, the undersigned, personally appeared Andrew Cummins personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their/ capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _Australia_. (Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
(Signature and office of individual taking acknowledgment)

Geoffrey Peter Granger
A Justice of the Peace in and for
The State of New South Wales
183054